UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TERRY G. WATSON,                    )
                                    )
            Petitioner,             )
                                    )
    vs.                             )        Case No. 4:15 CV 1864 ACL
                                    )
CHANTAY GODERT,                     )
                                    )
            Respondent.             )

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Terry G. Watson for a writ of habeas

corpus under 28 U.S.C. § 2254.

### I.   Procedural History

Watson is currently incarcerated at the Northeast Correctional Center in Bowling Green,

Missouri, pursuant to the sentence and judgment of the Circuit Court of Jefferson County,

Missouri.   (Respt's Ex. D at 63-65.)   On February 29, 2012, a jury found Watson guilty of

first-degree statutory rape, second-degree statutory rape, two counts of first-degree statutory

sodomy, and incest.   *Id.* at 42-46.   The court followed the jury's recommendation and sentenced

Watson to an aggregate sentence of nineteen years' imprisonment.   *Id.* at 56-65.

In his direct appeal of his convictions, Watson raised three claims: (1) the trial court abused

its discretion in submitting an instruction to the jury regarding the requirement of unanimity for the

count of first degree statutory rape; (2) the trial court plainly erred in allowing the prosecutor to

make certain statements in closing argument, and that those statements resulted in manifest

injustice; and (3) the trial court plainly erred in admitting the victim's brother's testimony

regarding Watson's alleged violence toward him.   (Respt's Ex. B.)   On September 3, 2013, the

Missouri Court of Appeals affirmed the judgment of the trial court.   (Respt's Ex. E.)

Watson filed a *pro se* motion for post-conviction relief under Rule 29.15.   (Respt's Ex. F at 5-60.)   After appointment of counsel, an amended post-conviction relief motion and request for evidentiary hearing was filed.   *Id.* at 66-139.   The amended motion raised the following claims: (1) trial counsel was ineffective in failing to introduce available medical records indicating Watson was diagnosed and treated for erectile dysfunction, a condition relevant to his theory of defense; and (2) trial counsel was ineffective for failing to file a pretrial motion to dismiss pursuant to Rule 25.18 or, in the alternative, for sanctions, because Deputy Carden Choney intentionally destroyed the victim's first statement and knew of its exculpatory nature.   *Id.* at 74, 69, 75.   The motion court denied Watson's amended motion after holding an evidentiary hearing.   *Id.* at 140-47.

In his single point on appeal from the denial of post-conviction relief, Watson raised the claim that trial counsel was ineffective related to Deputy Choney's destruction of the victim's statement.   (Respt's Ex. G.)   The Missouri Court of Appeals affirmed the decision of the motion court.   (Respt's Ex. I.)

Watson filed the instant Petition on December 16, 2015, in which he raises the following grounds for relief: (1) the prosecutor's comments during closing argument improperly shifted the burden of proof to the defense; (2) the trial court abused its discretion in overruling Watson's objection to instruction number 9; (3) the trial court erred in allowing testimony from Watson's son regarding Watson's physical abuse; (4) trial counsel was ineffective in failing to introduce medical records to prove Watson suffers from erectile dysfunction; (5) the prosecutor committed misconduct by asking witnesses why Watson disliked the victim's boyfriend; (6) the prosecution stole valuable property and evidence from his home; (7) the State's witnesses committed perjury; (8) the prosecutor relied on facts outside of evidence during his closing argument; (9) the police should have prevented the victim from deleting her Facebook account and emails; (10) trial counsel was ineffective for failing to call an orthopedic surgeon or pain specialist at trial; (11) trial

counsel was ineffective for failing to call an expert to testify about DNA evidence, police procedure, or child psychology; (12) the evidence was insufficient to convict him of statutory rape, statutory sodomy, and incest; (13) the prosecutor violated attorney-client privilege by asking Watson's probation officer what he told her; (14) members of the jury were biased against him; (15) trial counsel was ineffective for failing to pursue a defense based on the fact the victim did not report the abuse for several years; (16) the prosecutor improperly named Watson's son as a "victim" in his opening statement; (17) he was prejudiced when his son testified at trial about an instance in which the son was highly intoxicated; (18) the trial court erred in asking Watson to remove military service medals in front of the jury; (19) the prosecution failed to obtain phone records showing text messages he sent to the victim; (20) his son committed perjury because his trial testimony was inconsistent with his testimony at a preliminary hearing; (21) the victim's testimony a trial concerning foreign exchange students was inconsistent; and (22) the prosecutor improperly vouched for the credibility of the State's witnesses during closing argument. (Doc. 12.)

Respondent filed a Response to Order to Show Cause, in which she argues that grounds 4 through 22 are procedurally defaulted, and all of Watson's claims fail on their merits. (Doc. 41.) Watson filed a Traverse, as well as supplemental evidence, in support of his claims. (Doc. 43.)

## II.    Facts[1]

The Victim ("Victim") is the daughter of Petitioner Terry G. Watson and Gina Watson ("Mother"). She grew up living with both parents in Imperial, Missouri. Sometime in 2001,when Victim was 12 years old, she came home from school to find her father sitting on the

---

[1]The Court's recitation of the facts is taken from the decision of the Missouri Court of Appeals on direct review. (Respt's Ex. E at 1-4.)

couch watching pornography on television. Mother was still at work. Victim had seen the film her father was watching, and he told her that day that he knew she had watched his pornography. Watson told Victim he was going to teach her what sex was about. Nothing further happened that day.

At some point after this, when Victim was still 12 years old, Watson called Victim into his bedroom. He told her he was going to work her out. She was on her parents' bed, and Watson put a dildo inside her vagina. She cried and told him it hurt. He continued to use objects like this with Victim for about one year, at least three to four times per month.

Sometime after Watson stopped using dildos on Victim, he called her into his bedroom, had her get on her knees, and instructed her to suck his penis. This happened during the school year in the afternoon. Victim gagged and teared up at one point, and Watson told her he would not do it like that again. Watson had Victim perform oral sex on him multiple times until Victim was 18 or 19 years old.

At some point when Victim was around 13 years old, Watson began having sexual intercourse with her. It would take place either in Watson's bedroom or the living room. In the living room it would take place either on the couch or on the floor. When it took place in the living room, Watson would turn pornography on the television, Victim would take her clothes off, Watson would take his clothes off, and he would be on top of her while having sex with her. Watson had sex with Victim three to four times per month.

When Victim was 13 or 14 years old, Mother found out about Watson's sexual activity with Victim. Victim heard her parents arguing about it, and after that, Mother became involved. Victim testified it would then be sex between the three of them sometimes. Victim also testified that Watson wanted to make sure she had not told anyone about their sexual activity, but that learning about sex from family members was normal and would happen for kids in Germany

around age 12. Victim testified that the last time any sexual activity occurred between Defendant and Victim was in January of 2009.

Victim's half-brother and Watson's son, Joseph Watson, moved into Watson's house in 2003, when Joseph was 15 years old. Joseph also became aware of Watson's sexual activity with Victim, and he witnessed Watson and Victim having sexual intercourse. Joseph also became involved in "family sex sessions" that took place with Watson, Mother, Joseph, and Victim all present. Joseph testified that Watson also told Joseph to perform sexual acts on Victim, which he did. When Joseph was 17 years old, after an incident in which Watson became angry with Joseph and threw a pick axe at Joseph and Victim, Joseph moved out.

Victim did not tell anyone about these incidents until 2010. She was dating a man who her father did not like, and she wanted to move out of the house. She told her aunt and her boyfriend about the sexual incidents with Watson. She was afraid she would not be able to get her things out of her house safely, because Watson was abusive and had threatened violence against her boyfriend. She asked police to accompany her to her home so she could remove her things. Deputy Carden Choney went with Vitim and her boyfriend to Victim's house. Deputy Choney waited outside while Victim retrieved her things, and no one else was present while they were there. Deputy Choney consulted detectives about further investigation, and he decided not to investigate for physical evidence of the sexual abuse in the house. This was because, given that it had been over one year since the last sexual incident, the detectives told Deputy Choney they believed no DNA evidence would be present.

### III.   Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

5

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in *Williams v. Collins*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405.   Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.*   Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410.   Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

## IV.    Petitioner's Claims

Watson raises twenty-two grounds for relief.   The undersigned will discuss these claims in turn.

## A.    Ground 1

In his first ground for relief, Watson argues that the prosecutor's comments during closing argument improperly shifted the burden of proof to the defense.

The following remarks are at issue:

> If you are on trial for this, for something like this, and you didn't commit, you want to prove your innocence.   You absolutely do.   Obviously the defendant wanted to tell you he was innocent.   He trots out medial records of a knee.   But if you are faced with an offense that requires sexual activity, and you can't perform it regularly.   And you've allegedly have medical documentation to that effect, but what you actually bring to a show-to show to the jury is a knee problem?   They weren't thinking.   And again, because they are trying so hard to make people look like liars, that they have lost their common sense.

(Respt's Ex. A at 630-31.)

The prosecutor was referring to Watson's defense theory that, due to various injuries and medications he was taking, he was unable to maintain an erection during sexual intercourse unless he was positioned with the woman on top of him.   *Id.* at 518-19, 569-71.   Watson argued that it was physically impossible for him to have sexual intercourse with Victim, because she testified that Watson was always on top of her during intercourse.   *Id.*   In support of this defense theory, Watson introduced medical records relating to a knee surgery he underwent, but introduced no evidence documenting any erectile dysfunction.   *Id.*

Defense counsel, in his closing, reminded the jury that the State had the burden of proof, and that it was not up to Watson to prove his erectile dysfunction.   *Id.* at 643.   In his rebuttal, the prosecutor stated as follows:

> And I admit, the burden is always on the State in a criminal case. However, the trick is, once the defendant opens his mouth, it's fair game.   So he trots in medical records to show his condition.   I mean he thought that was so important that he showed you about his knee, that he brought the records.   Why on earth is that important?   His knee?   When the actual records that would actually poke holes in her case, the erectile dysfunction, weren't given.   So yeah, I do still have the burden of proof, but don't get confused for a second.   The second they opened their mouth, it's fair game.

*Id.* at 651-52.

Watson challenged the prosecutor's statements in his direct appeal, arguing that the trial court plainly erred by failing to *sua sponte* intervene. The Missouri Court of Appeals held as follows:

> In light of the whole record, we do not see plain error in the trial court's decision not to intervene in this argument absent a defense objection. While Defendant correctly points out that intentional misstatements of the burden of proof are plain error, we do not see such misstatements present in the context of the whole record. *Cf. State v. Jackson*, 155 S.W.3d 849, 854 (Mo. App. W.D. 2005). Rather, the State correctly represented the burden of proof in its initial closing and in rebuttal. The State then clarified that once Defendant testified, the State was at liberty to attack Defendant's conclusions regarding the evidence and point out Defendant's own inconsistencies, despite Defendant's attempt to show himself innocent. *See State v. Taylor*, 831 S.W.2d 266, 269-70 (Mo. Ap. E.D. 1992). These are not misstatements of the law. *See id.* We see no evident, obvious, and clear error on the part of the trial court, and thus we need not determine whether any error caused manifest injustice. *See Irby*, 254 S.W.3d at 192. Point denied.

(Respt's Ex. E at 14.)

This Court may grant Watson habeas relief only if "the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999). With "the strict due process standard of constitutional review, the deferential review mandated by the AEDPA, and [this Court's] less reliable vantage point for gauging the impact of closing argument on the overall fairness of a trial," the Court's review of whether the State's closing argument violated Watson's right to due process is "exceptionally limited." *Id.; see also Sublett v. Dormire*, 217 F.3d 598, 600 (8th Cir. 2000).

The State court's determination was neither contrary to nor an unreasonable application of clearly established Federal law. The prosecutor did not misstate the State's burden of proof. Rather, the prosecutor simply attacked the reasonableness of Watson's testimony, while clarifying

on rebuttal that the burden of proof remained with the State.   Thus, the prosecutor's remarks did

not violate Watson's Due Process rights.

Accordingly, Ground One is denied.

## B.    Ground 2

In his second ground for relief, Watson argues that the trial court abused its discretion in

submitting jury instruction 9, over Watson's objection.   He contends that the instruction could

have allowed the jury to convict without a unanimous verdict.

The State submitted Instruction No. 9 pursuant to *State v. Celis-Garcia*, 344 S.W.3d 150,

154-55 (Mo. banc 2011).   (Respt's Ex. D at 28.)   Instruction 9 reads as follows:

> The State of Missouri, County of Jefferson alleges that the defendant
> committed acts of Statutory Rape in the First Degree, to wit: the defendant had
> sexual intercourse with [K.W.], who was less than fourteen years old, on multiple
> occasions in Instruction Number 8.   To convict the defendant of Statutory Rape in
> the First Degree, one particular act of Statutory Rape in the First Degree, to wit:
> having sexual intercourse with K.W., *must be proved beyond a reasonable doubt,
> and you must unanimously agree as to which act has been proved*.   You need not
> unanimously agree that the defendant committed all the acts of Statutory Rape in
> the First-Degree.

*Id*.   (emphasis added).   The same *Celis-Garcia* instruction was repeated for each offense in

Instruction Nos. 11, 13, 15, and 17.   *Id.* at 30, 32, 34, 36.

During the instructions conference, Watson objected to all of the *Celis-Garcia* instructions

because they "confuse the jury, and [provide] fair grounds to either be confused or wrongfully

convict [his] client of these offenses."   (Respt's Ex. A at 610.)   The court denied Watson's

request to remove those instructions from the packet.   *Id.* at 611.

Article I, § 22(a) of the Missouri Constitution guarantees a criminal defendant the right to a

unanimous jury verdict.   *Celis-Garcia*, 344 S.W.3d at 155 (Mo. banc 2011) (citing *State v.*

*Hadley*, 815 S.W.2d 422, 425 (Mo. banc 1991)).   "For a jury verdict to be unanimous, the jurors

must be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt." *Id.* The issue of jury unanimity is implicated in "multiple acts" cases, which arise "when there is evidence of multiple distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Id.* at 155-56. The Missouri Supreme Court in *Celis-Garcia* clarified the requirements of a unanimous verdict in these types of cases. *Id.*

The Court instructed that a defendant's right to a unanimous jury verdict would be protected in a multiple acts case by either: (1) the State "electing the particular criminal act on which it will rely to support the charge;" or (2) the verdict director "specifically describing the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred." *Id.* at 157. The Court declined to address the State's argument "that requiring the [S]tate to differentiate between multiple acts would make it impossible to prosecute sexual abuse cases involving repeated, identical sexual acts committed at the same location and during a short time span because the victim would be unable to distinguish sufficiently among the acts." *Id.* at 157 n.8. Rather, the Court determined, "[t]he case hypothesized by the [S]tate was not the one presented here because both [victims] provided details of multiple sexual acts that were committed at different times and in different locations." *Id.*

Watson raised this claim in his direct appeal. The Missouri Court of Appeals held:

> The scenario raised by the State in *Celis-Garcia* is precisely the one we face here. While Victim described the acts of statutory rape as taking place in two locations, either in the master bedroom or in the living room, she testified that these incidents took place three to four times per month, repeatedly in both locations. She described a 'routine' that was similar with each criminal act. She did not distinguish between each specific act in her testimony, as each was similar each time and each happened multiple times. The only distinction was location, yet multiple identical acts took place in each location. Thus, Defendant's argument

that *Celis-Garcia* requires use of one of its two verdict directors here, in a factual circumstance that the court specifically declined to consider, is unfounded.

(Respt's Ex. E at 8-9).   The court found that Instruction 9 did not confuse, mislead, or misdirect the jury.   *Id.* at 9.   With regard to Watson's claim that Instruction 9 diminished the State's burden of proof because it suggested they could disregard inconsistent evidence as long as the entire jury agreed to one act, the court stated:

> We do not agree this diminishes the State's burden of proof.   We presume the jury followed the court's instructions.   *State v. Madison*, 997 S.W.2d 16, 21 (Mo. banc 1999).   They were instructed that they must find each element of first-degree statutory rape beyond a reasonable doubt, and that they must all find these elements present in the same act of statutory rape.   The apparent implication of Defendant's argument is that the jury must believe all instances in evidence or none.   However, it was possible from the evidence for the jury to believe that sexual intercourse occurred multiple times in one location and to disbelieve it occurred in another location.   Such belief by the jury would still support a conviction on the one count of first-degree statutory rape.

*Id.* at 11.

The Supreme Court has held that neither the Due Process clause nor the Sixth Amendment require unanimous verdicts in state criminal cases.   *Johnson v. Louisiana,* 406 U.S. 356, 362-63 (1972); *Apodaca v. Oregon,* 406 U.S. 404, 406 (1972).   Instructional error is only a basis for habeas relief where "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."   *Estelle v. McGuire,* 502 U.S. 62, 72 (1991).   To obtain habeas relief, the Petitioner must show that there was a "'reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."   *Waddington v. Sarausad,* 555 U.S. 179, 190-191 (2009) (citations omitted).   Accordingly, the Court must determine whether the instruction as given violated Petitioner's right to due process.   *Estelle,* 502 U.S. at 71-72; *Hawkins v. Roper,* 2007 WL 2332280, at *10 (E.D. Mo. 2007).

In this case, Watson has not shown that Instruction 9 violated his due process rights. The instruction clearly provided that the elements of statutory rape must be proved beyond a reasonable doubt. It further instructed that the jury must "unanimously agree as to which act has been proved." (Respt's Ex. D at 28.) Even if Watson stated a federal claim due to the alleged violation of *Celis-Garcia*, the Missouri Court of Appeals held that Instruction 9 was proper under Missouri law. This determination is entitled to deference in federal habeas review under 28 U.S.C. § 2254(d).

Accordingly, Ground 2 is denied.

## C.    Ground 3

In Ground 3, Watson argues that the trial court erred in allowing testimony from his son Joseph about Watson's physical abuse. Watson claims that this testimony was irrelevant evidence of uncharged bad acts.

During defense counsel's cross-examination of Joseph, counsel asked whether Watson was a strict father. (Respt's Ex. A at 409.) Joseph responded that Watson was very strict. *Id.* Defense Counsel then asked whether Watson wanted things done in a safe way and in a responsible way, and Joseph testified that he would not say "safe" or "responsible." *Id.* at 410. During redirect, the prosecutor asked Joseph to explain why he said Watson was strict but not safe or responsible. *Id.* at 419. Joseph testified that he had sustained an injury while working on a construction project with Watson, and Watson viewed the injury as a "badge of honor." *Id.* at 421. Joseph then stated that there were other instances where he was working on a construction project with Watson and Watson "would get angry, and kick you in the head, he would grab you by the back of the head, and smash your face into--." *Id.*

Defense counsel objected at this point on the basis of relevance. *Id.* The prosecutor responded that defense counsel had opened the door by asking Joseph if his father was strict. *Id.* at 422. The court overruled defense counsel's objection. *Id.*

Joseph continued testifying as follows:

> Um, it was constantly that kind of thing. You know, if you were working with dad and you didn't do something exactly right, he would become angry and he would strike you.
> [Prosecutor]: And when you say he would strike you, I mean are we talking in the face? Punching you in the face or what?
> [Joseph]: Yeah, whatever was there. Kick you in the head. Hit you with a steel pry bar, whatever was laying around, it didn't matter.
> [Prosecutor]: With regards to the discipline, anything other than the physical discipline is there anything else that you can recall?

*Id.* Joseph went on to describe the following incidents: he severed the tip of his finger during a project when Watson caused a floor joist to drop on his finger; Watson required Joseph to work the day after the injury, at which time Joseph reinjured his finger; and on another occasion, Joseph forgot to feed the chickens and Watson only allowed Joseph to eat what the chickens produced for three days. *Id.* at 423-24.

Watson raised this claim in his direct appeal. He conceded that his claim was not preserved in his motion for new trial, and therefore requested plain error review. The Missouri Court of Appeals held:

> We do not find plain error in the trial court's admission of this testimony. First, when a defendant injects an issue into a case, the prosecution may be entitled to introduce otherwise inadmissible evidence in order to rebut a negative inference. *State v. Bolds,* 11 S.W.3d 633, 639 (Mo. App. E.D. 1999). Here defense counsel's opening statement had included statements that Defendant was a strict father because he made them go to school, have jobs, and do chores; and that his children resented him because of it. Defense counsel sought confirmation of this statement when he asked Brother if Defendant was strict in ways that were safe and responsible. Brother did not agree but the jury could have believed that was because Brother considered chores, work, and schoolwork to be too strict, unsafe, and irresponsible. The State, therefore, was permitted to have Brother explain why he felt Defendant's strictness was neither safe nor responsible. The trial court did not commit error by permitting Brother to describe his reasons for his feelings

in this respect.  *See State v. Rutter*, 93 S.W.3d 714, 727 (Mo. banc 2002) (stating irrelevant evidence 'can nevertheless become admissible because a party has opened the door to it with a theory presented in an opening statement').

Additionally, defense counsel did not object to Brother's further description of Defendant's response to his finger injury, or of Defendant's discipline when Brother forgot to feed their chickens.  Defendant argues the trial court's failure to interject *sua sponte*, to exclude this evidence of uncharged acts against Brother, was an abuse of discretion that affected the outcome of this trial.  However, Victim had previously testified without objection that her father was "abusive" separately from the sexual acts, explaining that she was afraid she would not be able to move out of her house safely because her father had said that if her boyfriend took her away from Defendant, he would "put a bullet in the back of his head."  Given this, and the fact that the verdicts regarding the sexual offenses were almost solely based on the jury's assessment of Victim's credibility regarding the sexual acts, we do not find that this testimony by Brother, even if admitted in error, had an outcome-determinative effect on the jury's verdicts.  *See Bolds*, 11 S.W.3d at 639.  Point denied.

(Respt's Ex. E at 16-17.)

A state court's admission of evidence of a defendant's uncharged bad acts does not necessarily constitute a due process violation.  *Harris v. Bowersox,* 184 F.3d 744, 752 (8th Cir. 1999).  A federal habeas court may reverse a state court evidentiary ruling as violating the petitioner's right to a fair trial only if the petitioner shows the alleged evidentiary error fatally infected the proceedings and rendered the petitioner's trial fundamentally unfair.  *Estelle,* 502 U.S. at 67-68; *Lisenba v. California,* 314 U.S. 219, 236 (1941); *accord Meadows v. Delo,* 99 F.3d 280, 283 (8th Cir. 1996) (addressing a petitioner's claim that evidence of other crimes was erroneously admitted).  To satisfy his burden, the petitioner must show there is a reasonable probability that the alleged error affected the trial's outcome, i.e ., that the verdict would have been different absent the allegedly erroneously admitted evidence.  *Harris,* 184 F.3d at 752; *Meadows,* 99 F.3d at 283; *accord Troupe v. Groose,* 72 F.3d 75, 76 (8th Cir. 1995).

Here, Defense counsel attempted to discredit Joseph's testimony by suggesting Joseph was motivated to fabricate allegations against Watson because he resented him for being strict.  The

State was entitled to question Joseph regarding why he thought Watson was strict, but not safe and responsible, due to defense counsel's line of questioning on cross-examination.

Assuming *arguendo* that Joseph's challenged testimony constitutes improper evidence of Watson's prior bad acts, Watson has not established that the verdict would have been different absent that testimony.   In addition to describing sexual abuse, the Victim also testified that she called the police when she wanted to move out because Watson was "abusive," and that he had threatened her boyfriend by stating he would "put a bullet in the back of his head."   (Respt's Ex. A at 267-268.)   Joseph testified that he witnessed the sexual abuse of Victim, and described instances in which he was forced by Watson to have sex with his sister and step-mother.   There is no reasonable probability that the admission of Joseph's challenged testimony affected the outcome of Watson's trial.   *See Parker v. Bowersox,* 94 F.3d 458, 460 (8th Cir. 1996) (admission of testimony that the petitioner had blackened the murder victim's eyes on one or two prior occasions did not violate the petitioner's right to due process in that it did not fatally infect the trial because there was "abundant testimony" that the petitioner was threatening and hitting the victim shortly before her death); *Troupe,* 72 F.3d at 76 (admission of earlier deviate sexual intercourse conviction did not violate the petitioner's right to due process in trial of rape, sodomy and kidnapping charges involving a minor boy in that it did not fatally infect the trial rendering it fundamentally unfair due to the other evidence at trial).

The state appellate court's decision to uphold the admission of Joseph's challenged testimony was not contrary to or an unreasonable application of clearly established federal law. Thus, Ground 3 is denied.

### D.    Watson's Remaining Grounds

Respondent argues that Watson's remaining grounds for relief are procedurally defaulted.

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly

presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Id.* at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. *Id.* at 1022 (quoting *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)).

Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default. *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "'present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted.'" *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

Watson failed to raise his remaining grounds for relief either on direct appeal or on appeal from the denial of post-conviction relief. Although Watson argues he raised his claims in his *pro se* post-conviction relief motion, he did not raise them in his post-conviction appeal. His claims are, therefore, procedurally defaulted. *See Storey v. Roper*, 603 F.3d 507, 523 (8th Cir. 2010) ("Storey did not appeal this finding in his state post-conviction appeal, and it is therefore procedurally defaulted.")

Watson argues that his procedural default should be excused due to ineffective assistance of counsel. A claim of ineffective assistance of appellate counsel cannot constitute cause to excuse a procedural default where the claim of ineffective assistance of appellate counsel is *itself* procedurally defaulted, unless the petitioner shows cause and prejudice to excuse that procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000). Here, Watson did not raise a claim of ineffective assistance of appellate counsel in the appeal from the denial of his motion for post-conviction relief, so it is procedurally defaulted. *See Moore-El v. Luebbers*, 446 F.3d 890, 897-98 (8th Cir. 2006) (Missouri inmate's failure to raise a claim on appeal from the denial of state post-conviction relief constitutes a procedural default of that claim).

Watson also suggests that his procedural default should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). The Supreme Court held in *Martinez v. Ryan* that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17. This exception only applies to ineffective assistance of trial counsel claims, and it is not extended to ineffective assistance of appellate counsel claims. *Davila v. Davis*, 137 S. Ct. 2058, 2070 (2017).

As Watson points out, he raised his claims in his initial *pro se* post-conviction relief motion. His claims were not, however, raised on post-conviction appellate review. *Martinez* does not apply to claims not preserved on post-conviction appeal. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) ("*Martinez* offers no support, however, for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause.").

Further, Watson cannot avoid the procedural bar under the fundamental miscarriage of justice exception. In his Traverse, Watson argues that he is actually innocent. To satisfy the

fundamental miscarriage of justice exception, however, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).   Watson does not allege any facts to support the existence of new evidence affirmatively demonstrating his innocence.

Thus, Watson's remaining grounds for relief should be dismissed as procedurally defaulted.   The Court's brief discussion below demonstrates that, even if Watson's claims were not procedurally defaulted, they fail on their merits.

**Ground 4**

Watson argues that trial counsel was ineffective for failing to introduce medical records to prove that Watson suffers from erectile dysfunction.   Watson raised this argument in his post-conviction motion.   At the evidentiary hearing on his motion, Watson introduced medical records from Esse Health, Tesson Heights Orthopedics, and the Department of Veteran's Affairs. (Respt's Ex. F at 150.)   Watson conceded that the reports introduced at the hearing did not mention erectile dysfunction and that the time frame of the records introduced was outside the time frame of the allegations of the sexual abuse.   *Id.*   The motion court stated that trial counsel testified at the hearing that Watson did give him some medical records that were not admitted at trial because they did not address the issue of erectile dysfunction.   *Id.*   The court held that trial counsel was not ineffective for failing to introduce the records.   *Id.*

In order to prevail on an ineffective assistance of counsel claim, Watson must demonstrate both that counsel's performance was constitutionally deficient, and that he was prejudiced thereby. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).   He must prevail on both prongs of the *Strickland* standard in order to obtain relief.   *See Worthington v. Roper*, 631 F.3d 487, 498 (8th

Cir. 2011) ("Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim.").

The motion court properly applied *Strickland* and found that counsel was not ineffective for failing to offer evidence that was not relevant to the issues at trial, and that Watson suffered no resulting prejudice. In the instant action, Watson has filed additional medical records. (Docs. 34-1, 48.) These records show various diagnoses, including a back impairment, knee impairment, and a hernia, but still do not contain a diagnosis of erectile dysfunction. The medical evidence submitted by Watson does not establish that it was physically impossible for Watson to engage in sexual activity during the relevant time. Given the evidence presented at trial, the introduction of the additional medical records would not have changed the outcome of the trial.

Ground Four is denied.

**Ground 5**

In his fifth ground for relief, Watson argues that the prosecution conspired with the Victim and Joseph to use statements about Watson's religion to bias the jury against him. Watson's claim lacks merit. Any time religion was referenced during the trial, it was relevant to the case.

Watson refers to the Victim's testimony that Watson did not like her boyfriend Craig "because Craig was a Christian, and my father is an atheist." (Respt's Ex. A at 266.) This testimony was relevant in explaining why Victim took a police officer with her to get her things from Watson's house. She testified that Watson threatened that he would "put a bullet in the back of [Victim's boyfriend's] head" if Victim moved out with her boyfriend. *Id.* at 267-68. Watson also points to Joseph's testimony that Watson thought "Americans were prudes," because their laws were based on Christian laws. *Id.* at 383. This testimony was relevant in explaining that

Watson told his children it was normal for parents to teach their children about sex by having sex with them. *Id.* at 383-85.

Ground Five will be denied.

## Ground 6

In Ground Six, Watson argues that prosecutorial misconduct occurred when Deputy Choney, the Victim, her uncle, and her boyfriend stole Watson's property and "exculpatory evidence" from Watson's home.

Watson's claim that Deputy Choney took items from Watson's home is refuted by the record. Deputy Choney testified that police never searched Watson's home because they did not believe they would be able to obtain DNA evidence based on the timeline of the crimes. *Id.* at 364-65. As to Watson's claim that the Victim stole valuable items from his home, this allegation does not state a cognizable claim for federal habeas relief.

Accordingly, Ground 6 is denied.

## Ground 7

In his seventh ground for relief, Watson argues that the State's witnesses committed perjury because some of their trial testimony was inconsistent with either prior testimony or facts known to Watson. Watson fails to state a cognizable claim for federal habeas relief. *See United States v. Peterson*, 223 F.3d 756, 763 (8th Cir. 2000) (holding that "the mere presence of a conflict between the testimony of [two witnesses] is insufficient to establish perjury"). Watson's allegations here fall far short of the showing needed to establish that the State knowingly used false testimony.

Ground Seven is denied.

**Ground 8**

Watson argues that the prosecutor testified to facts not in evidence during closing argument. Watson's claim relates to conflicting statements made during the trial regarding bus routes. The Victim testified that her school bus could drop her off either at Watson's hardware store or at their home, whereas Watson testified that the Victim was always dropped off at the hardware store unless there was a special situation.

During his closing argument, defense counsel stated that jurors with children knew that the Victim's testimony was incredible because children need special permission to be dropped off at a different stop. (Respt's Ex. A at 637.) In rebuttal, the prosecutor argued that the jurors familiar with bus routes in Jefferson County would know that "it's not a big deal to get dropped off at [a] different spot." *Id.* at 650.

The prosecutor's comment was not improper but was merely responding to defense counsel's argument and asking the jurors to apply common sense. Watson has not shown a statement so inflammatory so as to violate his Due Process rights.

Ground Eight is denied.

**Ground 9**

In his ninth ground for relief, Watson argues that police failed to preserve evidence by allowing the Victim to delete social medial accounts and emails. Watson's claim lacks merit. Police could not have prevented the Victim from altering her personal social medial or email accounts. Further, the alleged evidence as described by Watson would not have been exculpatory.

Ground Nine is denied.

**Ground 10**

Watson argues that trial counsel was ineffective in failing to call an orthopedic surgeon or pain specialist to testify about Watson's disabilities.

Watson contends that, after sustaining injuries to his left foot, knee, hip, and back while on active duty in the Army, he was unable to continue his career as a carpenter and instead opened a hardware store. Watson states that an expert witness would have been better able to explain his disabilities "in terms of what is physically possible and what is not." (Doc. 12 at 22.)

Watson fails to show trial counsel was ineffective under *Strickland*. He does not allege that a medical expert would testify that he was physically incapable of having sexual intercourse. Thus, he is unable to demonstrate prejudice.

Ground Ten is denied.

**Ground 11**

In his eleventh ground for relief, Watson claims that trial counsel was ineffective for failing to investigate expert witnesses "on DNA, proper police procedure, [and] child psychology." (Doc. 12 at 23.) He contends that such witnesses would have testified that the crime scene was not properly preserved, and that Joseph's grades improved in Watson's home. Watson further states that an expert would have described the effects of PTSD on victims of sexual abuse.

Watson's claim is based on pure speculation and fails to demonstrate the prejudice required by *Strickland*. As previously noted, investigating officers did not attempt to obtain DNA evidence based on the timeline of the reported crimes. Consequently, retaining an expert witness to discuss DNA evidence would have been irrelevant. Additionally, there is no evidence in the record that either the Victim or Joseph suffers from PTSD making testimony concerning PTSD

irrelevant.   As noted by Respondent, "Watson indoctrinated [Victim and Brother] to believe that the sexual abuse they were experiencing was normal, and they did not report the abuse until much later."   (Doc. 41 at 37.)

Ground 11 is denied.

**Ground 12**

Watson next argues that he is actually innocent and that the evidence was insufficient to support his convictions.

The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."   *McQuiggins v. Perkins*, 569 U.S 383, 392 (2013).   In any event, Watson has not introduced new evidence establishing his innocence of the crimes charged.

Watson's claim that the evidence was insufficient to support his convictions similarly lacks merit.   In reviewing a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).   At Watson's trial, both the Victim and Joseph testified extensively about Watson's frequent and long-term sexual abuse that occurred while Victim was a minor.   This testimony serves as sufficient evidence to support Watson's convictions.

Ground 12 is denied.

**Ground 13**

In his thirteenth ground for relief, Watson argues that the prosecutor violated attorney-client privilege by asking Watson's probation officer what Watson told her.   The Eighth

Circuit Court of Appeals has rejected the concept of probation officer-probationer privilege. *United States v. Holmes*, 594 F.2d 1167, 1171 (8th Cir. 1979) ("Holmes cites no authority, nor have we found any, in which a federal court has recognized a 'probation officer' privilege or an analogous privilege accorded to a person in a similar role.")

Ground 13 is denied.

**Ground 14**

Watson alleges that members of the jury were biased against him. First, he claims that juror Michael Howser had been a victim of sexual abuse. The record, however, does not support this allegation. The record instead reveals that Howser testified he would listen to evidence from both sides and come to a fair conclusion. (Respt's Ex. A at 189-90.)

Next, Watson argues that foreperson Mary Eimer was biased against him because she shook her head "up and down mouthing the words right, right, right as Petitioner testified." (Doc. 12 at p. 26.) He also contends that Eimer was a "fundamental Christian by the way she dressed and reacted to certain testimony." *Id.* at 27. Watson has not shown Eimer was biased. Indeed, Watson's description of Eimer shaking her head up and down and stating "right" as Watson testified tends to show support for Watson. Watson's claim that Eimer was a Christian fundamentalist is based on pure speculation on his part.

Lastly, Watson claims that Gary Sullentrop was biased against him because Sullentrop frequented Watson's hardware store. Sullentrop testified that he visited Watson's hardware store, but he did not know or recognize Watson, nor did he know anything about the store. (Respt's Ex. A at 187-88.)

Ground 14 is denied.

**Ground 15**

In Ground 15, Watson argues that trial counsel was ineffective for failing to argue and "pursue a defense of failure to report the alleged abuse when there was opportunity to do so." (Doc. 12 at 28.)   Watson's claim fails.   The fact that the Victim did not report the sexual abuse for several years does not provide Watson with a defense.   Trial counsel was not ineffective in failing to make a meritless argument.

Ground 15 is denied.

**Ground 16**

Watson argues that the prosecutor improperly named Joseph as a "victim" in his opening statement despite the fact that Joseph was not a named victim.   He also objects to the fact that Joseph was allowed to submit a victim impact statement during sentencing.

The record reveals that the prosecutor summarized what he expected Joseph's testimony to be, but did not ever refer to Joseph as a "victim."   (Respt's Ex. A at 216-17.)   Watson cites no authority that victim impact statements provided during sentencing are restricted to victims identified in charging documents.

Ground 16 is denied.

**Ground 17**

Watson argues that the testimony of Joseph regarding a particular instance of sexual abuse was "highly unreliable and prejudicial" to him because Joseph was intoxicated during the incident. (Doc. 12 at 29.)   Watson fails to state a cognizable claim for federal habeas relief.   Defense counsel had the opportunity to cross-examine Joseph regarding his level of intoxication and his memory of the events at issue.   It is the jury's function to judge the credibility of witnesses.

Ground 17 is denied.

**Ground 18**

In his eighteenth ground for relief, Watson argues that the trial court forced Watson to remove his military service medals in front of the jury, thereby causing the jury to be biased against him. There is no record of the court requiring Watson to remove his medals. Even if this incident had occurred as Watson describes, he cannot demonstrate that it affected the outcome of the trial.

Ground 18 is denied.

**Ground 19**

Watson claims that the prosecution suppressed ex parte communications between the Victim and Joseph. Specifically, he states that Joseph testified at a preliminary hearing that he and the Victim occasionally exchanged text messages. He contends that, once the prosecutor heard this testimony, he had a duty to obtain Joseph's phone records and produce them to Watson.

Watson cites no authority that would require the prosecutor to obtain the phone records and produce them to him under these facts. Watson could have requested the records himself through the use of a subpoena. He does not claim that the State was in possession of exculpatory evidence that they failed to disclose to him.

Ground 19 is denied.

**Ground 20**

Watson next argues that Joseph committed perjury when he testified at trial that he reported the sexual abuse to his grandparents, but testified at a preliminary hearing that he told "no one really" about the abuse. (Doc. 12 at 33.) Watson has not shown that these somewhat inconsistent statements establish Joseph committed perjury, or that the State knowingly presented false testimony.

Ground 20 is denied.

**Ground 21**

In Ground 21, Watson argues that the Victim's testimony was inconsistent because she testified that she brought foreign exchange students to the home in an attempt to stop the sexual abuse, yet also testified that sexual abuse occurred during the same time period. Watson fails to state a claim for federal habeas relief. The fact that the Victim hoped to minimize sexual abuse by bringing more people into the home is not inconsistent with sexual abuse nonetheless occurring during this period.

Ground 21 is denied.

**Ground 22**

In his final claim, Watson argues that the prosecutor improperly vouched for the credibility of the State's witnesses during closing argument.

After a review of the prosecutor's closing argument, the undersigned does not find any basis for an improper vouching claim. Watson does not allege that the prosecutor relied on personal knowledge or guarantees to vouch for the witnesses, but simply argued that the motivations and testimony of the State's witnesses suggested they were telling the truth. "The context of the remarks establishes that the prosecutor was arguing the credibility of her witnesses, not vouching for their credibility." *Bass v. United States*, 655 F.3d 758, 761 (8th Cir. 2011). "The prosecutor did not ask the jury to rely on her in making its decision." *Id.*

Ground 22 is denied.

**V.   Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues

deserved further proceedings.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).   In this case, Watson has failed to make a substantial showing of the denial of a constitutional right.   The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

**IT IS FURTHER ORDERED** that all pending motions (Docs. 91, 92, 93) are **denied as moot**.

Dated this 28th day of March, 2019.

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE